Roger P. SONNABEND et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 6841.

United States Court of Appeals First Circuit.

Heard March 6, 1967.

Decided May 16, 1967.

---

8. Because of manifest deficiencies in its brief, one of which is noted in fn. 2, supra, we decline to award costs.

David Burstein, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for petitioners.

Stephen H. Paley, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Grant W. Wiprud, Attys., Dept. of Justice, were on brief, for respondent.

Before ALDRICH, Chief Judge, WOODBURY and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The sole question in this petition to review a decision of the Tax Court is whether taxpayer was properly limited by section 270 of the Internal Revenue Code of 1954 in respect to deductions allowable to his cattle farm business in 1958[1] to $50,000. But for this statute, he was admittedly entitled to a loss deduction of $82,363.

Section 270(a) provides, "If the deductions allowed by this chapter * * *(other than specially treated deductions, as defined in subsection (b)) * * * attributable to a trade or business carried on by him for 5 consecutive taxable years have, in each of such years · * * exceeded by more than $50,000 the gross income derived from such trade or business * * * such deductions shall be allowed only to the extent of $50,000 * * *." (Ital. suppl.) Subsection (b) defines specially treated deductions to include "expenditures as to which taxpayers are given the option, under law or regulations, either (1) to deduct as expenses when incurred or (2) to defer or capitalize."

■ The first issue seems to us very simple. Cattle raised for breeding are capital assets. Consequently, as the government concedes, the cost of their feed can be capitalized. Cf. United States v. Catto, 1966, 384 U.S. 102, 86 S.Ct. 1311, 16 L.Ed.2d 398. A regulation provides, however, " * * * the purchase of feed and other costs connected with raising livestock may be

treated as expense deductions * · *." 26 C.F.R. § 1.162–12. As a result of this option to expense, rather than capitalize, the cost of feed, this cost precisely meets the statutory definition of a "specially treated deduction." Although taxpayer's deductions taken on his returns in 1954–1958 exceeded $50,000 in each year, they might not have done so had the cost of feed not been included. If so, section 270 would not become applicable to this case.

■ The government makes a number of attempts to escape this conclusion. One is that the taxpayer, having elected to expense his feed costs, lost the option. The statute does not speak in terms of exercising the option, or of the way it is exercised, but is concerned only with whether the type of deduction is one as to which an option was given. The government's contention, we may also remark, is directly contrary to the Commissioner's own ruling made under this section in connection with another optional deduction. Rev.Rul. 56–170, 1956–1 Cum.Bull. 155.

Alternatively, the government contends that the option to capitalize expenditures for feed is not available to cash basis farmers. It asserts that this consequence is the result of a special "simplified accounting system" provided for farmers. The government is able to cite no authority for the point except a possible suggestion in Little v. Commissioner of Internal Revenue, 9 Cir., 1961, 294 F.2d 661, which involved, however, an unsuccessful attempt by accrual basis farmers to change their method of accounting from the accrual basis to cash. Not only is Little thus clearly distinguishable, but the taxpayers in that case were, in essence, protesting a direct regulation that required accrual basis farmers to capitalize their costs. Here there is no supporting regulation, unless we are to read "may be treated as expense deductions," supra, as "shall be treated * * *." We see no ground for so doing.

1. 1958 is the only year remaining open, so that "recomputation" for prior years, even if otherwise permitted by this statute, is not here involved.

Possibly the reason for the government's position can be discerned in its extensive plaint that to reject its contentions would prove extremely favorable to farmers. It may be unusual that a taxing statute works out unfavorably for the government, but we know of no rule that such a construction is impermissible. If Congress wishes to temper the wind to shorn farmers, this is not the first time, nor is it any of our concern.

This conclusion does not necessarily resolve the case. The parties are in dispute as to whether the record shows that eliminating feed, etc., expenses as special deductions is sufficient to interrupt the five-year cycle of $50,000 in section 270 losses. If it does not, taxpayer makes an additional point that certain development expenses prior to the commencement of production may be capitalized and hence may also be excluded from the $50,000 computation. Treas.Reg. 1.162–12. The court found that taxpayer's farm was in production "during 1954." Taxpayer contends it was not in production until 1956.[2]

Taxpayer purchased the farm and a relatively small herd in 1952. In June 1953 he purchased in New York a large herd, assertedly the best Guernsey herd in the country, and sold most of his previous herd. His farm was entirely inadequate to operate on such an enlarged scale, and he was obliged to leave the new cattle in New York. During 1953 and 1954 some $240,000 was spent in improving the farm, partially in clearing 150–200 acres for pasturage, but principally for new buildings and some new equipment. The Tax Court found that the new herd was moved to taxpayer's farm in the spring of 1954 "after many of the improvements * * * had been completed."

We cannot regard the court's finding that the farm was in production "during 1954" as plainly wrong if it be construed merely to mean during some part of 1954. However, we think it demonstrated that taxpayer's business was not in production until the date in 1954 when the herd was moved in. The mere ownership of the cattle before then was a holding operation, only, and if the court meant that the farm was in a productive state throughout the 1954 fiscal year, its finding was clearly erroneous. If, on the other hand, the court did not find production throughout 1954, but, rather, ruled as a matter of law that if the farm was in a productive state at any time during that year none of the development expenses could be capitalized, it cites no authority in support of such a proposition, and we are aware of none. We believe such a result not intended by the regulation and, accordingly, hold that those development expenses incurred prior to the date in 1954 when the cattle were moved from New York are to be considered specially treated deductions and excluded from the loss computation for 1954 in determining the applicability of I.R.C. § 270.

The decision of the Tax Court is vacated and the case remanded for further proceedings.

---

2. The farm operation was on a fiscal year basis, ending June 30.